**NO. 26-2246**

# UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

FAITH BENSON, individually and on behalf of all others similarly situated,

Plaintiff/Appellant

v.

SIMPLENURSING LLC,

Defendant/Appellee.

On appeal from an order of the United States District Court for the
District of Delaware in No. 1:24-cv-01118,
Honorable Gregory B. Williams

# BRIEF OF APPELLEE SIMPLENURSING LLC

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT .......................................................................8

COUNTER-STATEMENT OF THE CASE ............................................................9

I. THE VIDEO PRIVACY PROTECTION ACT ...................................9

II. RELEVANT FACTS .........................................................................10

III. PROCEDURAL HISTORY ...............................................................12

IV. DISTRICT COURT DECISION........................................................13

SUMMARY OF THE ARGUMENT ......................................................................14

STANDARD OF REVIEW ......................................................................................16

ARGUMENT ...............................................................................................................17

I. The Alleged Disclosure of Benson's Subscription to Access Videos is Not Personally Identifiable Information Under the Plain Text of the VPPA. ...........................................................................................17

A. The Statutory Text of the VPPA is Clear. ...............................17

B. Benson's Argument that the VPPA "Includes" Disclosure of a Subscription Service is Not Supported by the Text and Ignores the Definition of Personally Identifiable Information. .............21

C. The Language of Section 2710(b)(2)(D)(ii) Does Not Support Benson's Negative Inference—Especially Given the Unambiguous Nature of the Rest of the Statute. ......................22

II. The District Court's Decision Relied on Sound Reasoning................24

A. The District Court's Reliance on *Nickelodeon* and Other District Court Decisions was Appropriate. ...............................25

B. The District Court Did Not Read a "Viewership" Requirement into the VPPA in Dismissing Benson's Claim. ........................28

III. The District Decisions Plaintiff Relies on Are Distinguishable. ........30

IV. Congress Did Not Intend for Personally Identifiable Information to Encompass a Subscription to Access Videos. ....................................32

CONCLUSION ....................................................................................35

CERTIFICATION OF BAR MEMBERSHIP ........................................................37

CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A) AND LOCAL RULE 31.1 ............................38

CERTIFICATION OF SERVICE.....................................................................39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ballentine v. United States*,
486 F.3d 806 (3d Cir. 2007) ....................16

*Brown v. Card Serv. Ctr.*,
464 F.3d 450 (3d Cir. 2006) ....................16

*Collins v. Pearson Education*,
721 F. Supp. 3d 274 (S.D.N.Y. 2024) ....................27

*Connecticut Nat. Bank v. Germain*,
503 U.S. 249 (1992)....................17

*Damrau v. Colibri Group, LLC*,
No. 4:24-CV-01441-JMD, 2026 WL 198712 (E.D. Mo. Jan. 23, 2026) ....................31

*Dobrek v. Phelan*,
419 F.3d 259 (3d Cir. 2005) ....................17

*Edwards v. MUBI, Inc.*,
773 F. Supp. 3d 868 (N.D. Cal. 2025)....................27

*Eichenberger v. ESPN, Inc.*,
876 F. 3d 979 (9th Cir. 2017) ....................18

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ....................16

*Golden v. NBCUniversal, LLC*,
688 F. Supp. 3d 150 (S.D.N.Y. 2023) ....................27

*Gonzalez v. Cent. Elec. Co-Op*, *Inc.*,
No. CIV. 08-0623-HO, 2009 WL 3415235 (D. Or. Oct. 15, 2009)....................28

*Haines v. Cengage Learning, Inc.*,
No. 1:24-CV-710, 2025 WL 2336089 (S.D. Ohio May 5, 2025)............... 30, 31

*In re Hulu Priv. Litig.*,
86 F. Supp. (N.D. Cal. 2015) ....................................................................19

*In re Nickelodeon Consumer Privacy Litigation*,
827 F.3d 262 (3d. Cir. 2016) ..................................................................... 18, 25

*In re Philadelphia Newspapers, LLC*,
599 F.3d 298 (3d Cir. 2010) .......................................................................17

*Korn v. Simplilearn Americas Inc.*,
No. CV 25-10461-NMG, 2026 WL 472984 (D. Mass. Feb. 19, 2026) ...........................................................................................31

*Kueppers v. Zumba Fitness, LLC*,
805 F. Supp. 3d 1226 (S.D. Fla. 2025).............................................................30

*Lovett v. Continued.com, LLC*,
No. 1:24-CV-590, 2025 WL 1809719 (S.D. Ohio July 1, 2025) ............... 19, 20

*Marshak v. Treadwell*,
240 F.3d 184 (3d Cir. 2001) .......................................................................17

*Martin v. Meredith Corporation*,
657 F. Supp. 3d 277 (S.D.N.Y. 2023) .................................................. 19, 26, 27

*Marx v. Gen. Revenue Corp.*,
568 U.S. 371 (2013)........................................................................................23

*Pileggi v. Washington Newspaper Publ'g Co., LLC*,
146 F.4th 1219 (D.C. Cir. 2025)................................................................. 22, 34

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015) ........................................................ 21, 22

*Santiago v. Warminster Twp.*,
629 F.3d 121 (3d Cir. 2010) .......................................................................16

*Shapiro v. Peacock TV, LLC*,
23-CV-6345 (KMK), 2025 WL 968519 (S.D.N.Y. Mar. 31, 2025) ..................20

*Solomon v. Flipps Media, Inc.*,
136 F.4th 41 (2d Cir. 2025) .......................................................................22

*Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*,
222 F.3d 132 (3d Cir. 2000) ....................16

*United States v. E.I. Dupont De Nemours & Co. Inc.*,
432 F.3d 161 (3d Cir. 2005) ....................17

*United States v. Shultz*,
No. 16-10107-01-EFM, 2018 WL 534333 (D. Kan. Jan. 24, 2018) ....................18

**Statutes**

§ 2710(a) ....................21

§ 2710(b)(2)(D) ....................23

18 U.S.C. § 2710(a)(3) .................... passim

18 U.S.C. § 2710(b)(1) ....................18

18 U.S.C. § 2710(b)(2) ....................9

18 U.S.C. § 2710(b)(2)(D)(ii) .................... 22, 23

**Rules**

Fed. R. App. P. 32(a)(7)(C) ....................38

Federal Rule of Appellate Procedure 32(A) ....................38

Federal Rules of Appellate Procedure Rule 32(a)(5) ....................38

Federal Rules of Appellate Procedure Rule 32(a)(6) ....................38

Federal Rules of Appellate Procedure Rule 32(a)(7)(b) ....................38

Federal Rules of Appellate Procedure Rule 32(f) ....................38

FRCP § 12(b)(6) .................... 12, 16

L.A.R. 26.1.1(b) ....................8

Local Rule 31.1 ....................38

Local Rule 31.1(c) ....................38

Third Circuit Local Appellate Rule 28.3(d)............................................................37

**Other Authorities**

Black's Law Dictionary (6th ed. 1990)....................................................................18

S. Rep. No. 100-599, 5 1988, U.S.C.C.A.N. 4342-5....................................... passim

*Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361*, 100th Cong. (1988) .......................................... 23, 24, 33

## DISCLOSURE STATEMENT

Pursuant L.A.R. 26.1.1(b), Appellee states that no publicly own corporation not a party to this appeal has a financial interest in the outcome of this litigation.

By: /s/ Justin Holmes, Esq.
Justin Holmes

<u>**COUNTER-STATEMENT OF THE CASE**</u>

## I. THE VIDEO PRIVACY PROTECTION ACT

The Video Privacy Protection Act ("VPPA") was enacted to protect against the improper disclosure of specific video content. During Judge Robert Bork's Supreme Court confirmation hearings, a newspaper obtained and published, without Judge Bork's consent, a list of 146 films that Judge Bork and his family rented from a local video store. *See* S. Rep. No. 100-599, 5 1988, U.S.C.C.A.N. 4342-5. This invasion of privacy prompted Congress to enact a law with the goal of "preserv[ing] personal privacy with respect to the rental, purchase or delivery of video tapes or similar audiovisual materials." *See id.* at 6. Importantly, the legislature did not seek to protect that Judge Bork had the *ability* to obtain videos through his Blockbuster membership but narrowly tailored the law to the disclosure of actual concrete video content.

The VPPA protects against the disclosure of information identifying the specific videos a consumer requests or obtains. Under the VPPA, it is a violation for a video tape service provider to knowingly disclose to any person personally identifiable information concerning the video tape service provider's consumer. *See* 18 U.S.C. § 2710(b)(2). The statute defines "personally identifiable information" to include information identifying a person as having "requested or obtained *specific* video materials or services from a videotape service provider." *Id.* § 2710(a)(3). (emphasis

added).

The VPPA was intended to be construed narrowly. Allegations that a person purchased a subscription providing access to a library of videos does not violate the statute. Inherent in the statute is the need for a disclosure of *particular videos* a person requested or obtained. The statute's express limitations on what constitutes personally identifiable information must be given effect, lest liability extend to disclosures Congress did not intend to prohibit.

## II. RELEVANT FACTS

SimpleNursing operates the website, www.simplenursing.com (the "Website"), where it offers educational resources on a subscription basis for students preparing for nursing school and standardized exams, such as the NCLEX-RN, TEAS, and NCLEX-PN. *See* JA A-42 ¶ 19. The resources SimpleNursing offers through these subscriptions include lectures in the form of short video-clips, study guides, and practice questions. *See* JA A-75. According to the operative First Amended Complaint (the "Complaint"), Plaintiff Faith Benson ("Benson") purchased a subscription on the Website on or about June 23, 2023, by providing her e-mail address, payment information, and zip code. *See* JA A-40 ¶ 10. Benson alleges that, at all relevant times, Benson had a Meta account and profile and a TikTok account and profile. *See* JA A-40 ¶ 9.

The Complaint concerns SimpleNursing's alleged use of two website tracking

technologies, Meta Pixel and TikTok Pixel, which consist of code that website operators can embed on their websites to collect information about visitors' activities and transmit that information to Meta and TikTok. *See* JA A-51; 56 ¶¶ 48; 73. According to Benson, when Benson or another subscriber requested or obtained a subscription, SimpleNursing disclosed, through the Meta Pixel, that a subscriber requested or obtained a subscription to access the video content on the Website, the URL where such video materials are available for purchase, along with the Facebook ID of the subscriber, to Meta. *See* JA A-39; 50; 54-55 ¶¶ 3, 46, 64, 67. Benson also asserts that SimpleNursing transmitted to TikTok, through the TikTok Pixel, Benson's cell phone number and unique device information, along with the fact that Benson purchased a subscription to access prerecorded videos and the URL where such video are available for purchase. *See* JA A-39; 50; 57-58 ¶¶ 4, 46, 78, 79, 81. The Complaint does not allege that SimpleNursing conveyed the titles of the videos available through a subscription, the titles of any videos Benson viewed, or the URLs at which those videos are available.

The Complaint asserts a single cause of action against SimpleNursing for a violation of the VPPA on behalf of Benson and a proposed class, which consists of all persons in the United States who, during the two years preceding the filing of the action, purchased a subscription to access prerecorded video materials or services from the Website while maintaining an account with Meta Platforms, Inc., and

TikTok, Inc. *See* JA A-59; 61-63 ¶¶ 87-88; 95-103. Based on the foregoing, Benson asserts SimpleNursing violated the VPPA by disclosing Benson's and the class's "private viewing information," which is defined in the Complaint as information that reveals a particular person purchased a subscription to access prerecorded video content on the Website. *See* JA A-39; 62-63 ¶¶ 3-4; 98-102

## III. PROCEDURAL HISTORY

Benson filed the initial complaint on October 9, 2024. *See* JA A-18-37. After SimpleNursing moved to dismiss, Benson filed the operative Complaint. *See* JA A-38-65. SimpleNursing then moved to dismiss the Complaint under Federal Rules of Civil Procedure ("FRCP") § 12(b)(6) on two grounds. *See* JA A-66. *First*, SimpleNursing is not a "video tape service provider," because the educational lectures it provides on the Website are not the "similar audio visual materials" Congress had in mind when it enacted the VPPA. *See* JA A-77-80. *Second*, the "private viewing information" SimpleNursing allegedly disclosed to Meta and TikTok is not personally identifiable information within the meaning of the statute. *See* JA A-80-82. SimpleNursing relied on this Court's decision in *In re Nickelodeon Consumer Privacy Litigation* ("*Nickelodeon*") and several district court decisions that analyzed the text of 18 U.S.C. § 2710(a)(3) in arguing that, by requiring information identifying a person as having requested or obtained "*specific* video materials or services," the VPPA requires disclosure of specific videos associated

with an identifiable consumer, not a subscription where videos are accessible. *See id.*

In opposing SimpleNursing's argument that the information SimpleNursing allegedly disclosed does not constitute "personally identifiable information," Benson argued for a broader interpretation of the sort of information that the VPPA covers. *See* JA A-99-101. Benson argued the disclosure of the existence of a subscription by itself was covered by the statute. *See id.*

## IV. DISTRICT COURT DECISION

On April 17, 2026, the District Court granted SimpleNursing's motion to dismiss the Complaint with prejudice. *See* JA A-4-12. Although the District Court concluded SimpleNursing qualifies as a "video tape service provider," it determined Benson failed to allege the disclosure of personally identifiable information. *See* JA A-10-12. The District Court agreed with SimpleNursing that "a specific video—not just a subscription to access videos—must be disclosed." *See id.* In reaching that conclusion, the District Court relied on this Court's decision in *Nickelodeon*, where the Third Circuit explained personally identifiable information is "the kind of information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *See id.* Because SimpleNursing "never convey[ed] the URLs for the webpages of any of its actual videos," and only disclosed the URL where the "subscription is available for purchase," the District

Court determined Benson failed to allege the disclosure of personally identifiable information within the meaning of the VPPA. *See id.* The District Court noted that "[i]f this Court found otherwise, SimpleNursing would violate the VPPA even if Benson never accessed a single prerecorded video. That is not the conduct the VPPA protects." *See id.*

The District Court also agreed with SimpleNursing that the caselaw Benson relied on was distinguishable because, in each case, the defendant allegedly disclosed the specific video title or the URL where the video was accessible to third-parties. *See id*. Moreover, the District Court rejected Benson's reliance on the VPPA's legislative history to characterize personally identifiable information more broadly because the plain text of the statute and the caselaw interpreting that text "unambiguously require disclosure of a specific video." *See id*. Accordingly, the District Court dismissed the Complaint with prejudice. *See id*.

## SUMMARY OF THE ARGUMENT

The District Court correctly dismissed the Complaint because disclosure of a subscription alone, without allegations about specific video content accessed, does not constitute "personally identifiable information" under the statute. The plain text of the statute controls. Section 2710(a)(3) protects information identifying a person as having "requested or obtained specific video materials or services." 18 U.S.C. § 2710(a)(3). Consistent with that language, courts interpreting personally identifiable

information focus on whether the disclosed information connects an identifiable consumer to the particular videos they requested. The information alleged in the Complaint does not. It reveals only that Benson purchased a subscription providing access to a broad unidentified library of nursing preparation content. It does not identify any particular video available through Benson's subscription, let alone whether Benson even accessed a video through her subscription.

To the extent this Court finds any ambiguity in the scope of the statute, the VPPA's legislative history reinforces that the statute was meant to protect against disclosure of information connecting a consumer to particular and specific video content. After a newspaper disclosed the rental history of Judge Robert Bork, Congress enacted the statute to protect against disclosure of an individual's particular video selections that could reveal private information about that individual. Congress did not seek to protect against the disclosure of something as general as Judge Bork's Blockbuster membership alone. The Senate Report is clear that Congress sought to protect a particular privacy interest, one that is defined to include only information concerning the videos an individual rents or purchases, and not a generalized right against disclosure of any information concerning a consumer of a video provider. Given the VPPA's stringent statutory remedies, there is no basis to expand that carefully drawn protection to information disclosing that someone purchased a subscription that provides access to an unspecific, unknown library of

videos. As the district court held, such an expansive reading of the statute would lend itself to an illogical result where, "SimpleNursing would violate the VPPA even if Benson never accessed a single prerecorded video. That is not the conduct the VPPA protects." *See* JA A-10-12.

## STANDARD OF REVIEW

This Court reviews de novo an order granting a motion to dismiss under FRCP § 12(b)(6) as well as questions of statutory interpretation. *See Ballentine v. United States*, 486 F.3d 806, 808 (3d Cir. 2007); *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 137 (3d Cir. 2000). In reviewing a FRCP § 12(b)(6) dismissal, the Court "must accept all well-pled allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 452 (3d Cir. 2006). This Court need not, however, accept legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010).

For purposes of this brief, SimpleNursing accepts Benson's well-pleaded factual allegations as true. Those allegations, however, do not establish that "private viewing information" is personally identifiable information under 18 U.S.C. §

2710(a)(3). Accordingly, this Court should affirm the District Court's grant of SimpleNursing's motion to dismiss.

## ARGUMENT

### I. The Alleged Disclosure of Benson's Subscription to Access Videos is Not Personally Identifiable Information Under the Plain Text of the VPPA.

A. The Statutory Text of the VPPA is Clear.

"It is the cardinal canon of statutory interpretation that a court must begin with the statutory language." *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, 304 (3d Cir. 2010). "The first step in interpreting a statute is to determine 'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'" *Marshak v. Treadwell*, 240 F.3d 184, 192 (3d Cir. 2001). When the words of a statute are unambiguous, that ends the judicial inquiry, and the Court should not consider the purpose or legislative history of the statute. *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254 (1992).

The Court assesses the plainness or ambiguity of statutory language by analyzing "the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Id.* Undefined terms are given their "ordinary and natural meaning." *United States v. E.I. Dupont De Nemours & Co. Inc.*, 432 F.3d 161, 171 (3d Cir. 2005). A provision is ambiguous only when the language in dispute is "reasonably susceptible of different interpretations." *Dobrek*

*v. Phelan*, 419 F.3d 259, 264 (3d Cir. 2005).

The text is unambiguous that the VPPA requires a disclosure of the specific videos a consumer requested or obtained for a violation to occur. It makes no reference to the disclosure of a subscription/membership service as sufficient to constitute a violation—a factual predicate inherent in the Judge Bork situation driving the passage of the VPPA—but, tellingly, not mentioned by the language of the VPPA. The VPPA makes a videotape service provider liable only for knowingly disclosing "personally identifiable information." 18 U.S.C. § 2710(b)(1). "Personally identifiable information includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).

"Specific" means "definite; explicit; of an exact or particular nature." Black's Law Dictionary (6th ed. 1990). The modifier "specific video" governs "materials" and "services." *United States v. Shultz*, No. 16-10107-01-EFM, 2018 WL 534333, at *4 (D. Kan. Jan. 24, 2018). Analyzing the statute's plain language, courts consistently hold personally identifiable information, by definition, must identify the particular video a person obtained or requested. *See In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 285 (3d. Cir. 2016) (the VPPA "protects personally identifiable information that identifies a specific person and ties that person to particular videos that the person watched."); *Eichenberger v. ESPN, Inc.*,

876 F. 3d 979, 984 (9th Cir. 2017) (concluding personally identifiable information covers information that can be used to identify an individual as having watched certain videos); *Martin v. Meredith Corporation*, 657 F. Supp. 3d 277, 284 (S.D.N.Y. 2023) (dismissing plaintiff's VPPA claim because the complaint left out essential information for a VPPA claim including the names of the videos plaintiff requested or obtained from defendant); *In re Hulu Priv. Litig.*, 86 F. Supp. At 1095 (N.D. Cal. 2015) ("For there to be an actionable VPPA violation, the video tape provider must have knowingly disclosed: (1) a consumer's identity; (2) the identity of 'specific video materials' and (3) the fact that the person identified 'requested or obtained' that materials.").

The rationale of the lower Court in appropriately deciding this case is further bolstered by the Southern District of Ohio's holding in *Lovett v. Continued.com, LLC*, where the plaintiff purchased a subscription on defendant's website that provided access to videos and other educational materials on topics like speech pathology, audiology, and occupational therapy. *See* No. 1:24-CV-590, 2025 WL 1809719, at *1 (S.D. Ohio July 1, 2025). Like Benson, the plaintiff there alleged the defendant disclosed to Meta her Facebook ID and the fact she purchased a subscription to defendant's website which provided access to video lectures. *See id.* at *3. The court held the disclosed information did not constitute personally identifiable information because the disclosure of plaintiff's subscription merely

indicates that a plaintiff *could* access videos on defendant's website, not that plaintiff requested or obtained specific videos. *See id.* at *3.

Here, Benson alleges SimpleNursing disclosed to Meta and TikTok the subscription she purchased to access a library of videos on the Website and the URL where the subscription was available for purchase. Benson does not allege, however, that SimpleNursing disclosed the titles of any of the videos available through the subscription, the URLs where those videos could be accessed, or the identity of any videos Benson obtained through her subscription. But under well-established caselaw, a "specific video—not just a subscription to access videos—must be disclosed." *See* JA A-11. Because Benson has failed to allege that SimpleNursing disclosed the specific videos she requested or obtained, her VPPA claim fails, and this Court should affirm the District Court's decision dismissing the Complaint.

Benson's argument that even if her subscription to access videos is not "specific video materials," it qualifies as a "specific video service" because SimpleNursing provided access to a collection of videos is unavailing and inapposite. That interpretation gives "specific" no limiting force because a collection of unidentifiable videos is not "specific." Further, if disclosing a person has a subscription to access a library of videos was enough, then disclosing a person subscribed to Netflix, for example, would result in a violation of the statute. The VPPA was never intended to sweep that broadly. *See e.g., Shapiro v. Peacock TV,*

*LLC*, 23-CV-6345 (KMK), 2025 WL 968519, at *10 (S.D.N.Y. Mar. 31, 2025) (plaintiff's status as a Peacock subscriber, coupled with a list of videos plaintiff browsed but did not watch, was insufficient to state a claim under the VPPA).

### B. Benson's Argument that the VPPA "Includes" Disclosure of a Subscription Service is Not Supported by the Text and Ignores the Definition of Personally Identifiable Information.

Benson argues that because § 2710(a)(3) uses the word "includes" to define "personally identifiable information" as opposed to "means," which the other definitions in § 2710(a) use, this Court should find that personally identifiable information is not limited to the categories which follow the term, but should expand the definition to encompasses a subscription to access videos. *See* Appellant's Br. at 15-16. Such an interpretation would ignore that "personally identifiable information" was defined to establish a floor Congress wanted for a VPPA violation to occur. Indeed, the Senate Report passage Benson cites confirms "includes" establishes "a *minimum*, but not exclusive, definition." Sen. Rep. 100–599, at 11–12 (1988) (emphasis added). As the Southern District of New York explained in *Robinson v. Disney Online*, that minimum means personally identifiable information "must, at the very least, 'identif[y] a particular person as having engaged in a specific transaction." 152 F. Supp. 3d 176, 182 (S.D.N.Y. 2015). "To be [personally identifiable information], information must identify a specific person and must tie this person to specific video materials; it can do no less." *Id.*

The word "includes" may leave room for information beyond the category of information expressly enumerated in § 2710(a)(3), but it does not dispense with the minimum the VPPA requires. For example, the disclosure may not need to expressly name a person to constitute personally identifiable if the information disclosed is capable of identifying that person. *See Solomon v. Flipps Media, Inc.*, 136 F.4th 41, 51 (2d Cir. 2025). Whatever form the disclosure takes, however, it must still satisfy the statutory minimum by identifying a person in connection with specific videos they obtained or requested. *See Robinson v. Disney Online*, 152 F. Supp. 3d at 182. A subscription to access a library of videos does not meet this minimum standard.

### C. The Language of Section 2710(b)(2)(D)(ii) Does Not Support Benson's Negative Inference—Especially Given the Unambiguous Nature of the Rest of the Statute.

Benson reliance on Congress's use of "title" in 18 U.S.C. § 2710(b)(2)(D)(ii) and the omission of title from 18 U.S.C. § 2710(a)(3) to argue that "specific video materials or services" does not require specific videos is misguided. A court must consider a statute as a whole rather than assigning controlling significance to the omission of particular words from one provision. *See Pileggi v. Washington Newspaper Publ'g Co., LLC*, 146 F.4th 1219, 1234–35 (D.C. Cir. 2025). The *expressio unius* canon Benson invokes to draw a negative inference from that omission "depends on context" and applies only where "it is fair to suppose that

Congress considered the unnamed possibility and meant to say no to it." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013).

Read in context, Congress did not intend to exclude specific videos, and their titles, from personally identifiable information, but the opposite**.** Section 2710(b)(2)(D) is an exception to the general prohibition on disclosure of personally identifiable information. It permits a video tape service provider to disclose a consumer's name and address for marketing, but only so long as the disclosure does not identify the title, description or subject matter of any audiovisual material. As discussed in the legislative history, there was concern with the indirect revelation of a specific video through identifying information that was not the title. *Video and Library Privacy Protection Act of 1988: Joint Hearing on H.R. 4947 and S. 2361*, 100th Cong. at 88 (1988) (discussing, "directly or indirectly disclos[ing] the character of the *video tape* rented.") (emphasis added). For example, disclosing that a consumer rented a movie about the Mafia and Vito Corleone starring Marlon Brando would inherently identify *The Godfather* without even providing the specific title. This is in direct opposition to a general topic like "nursing."

Moreover, the language of Section 2710(b)(2)(D)(ii) as passed makes clear that Congress did not view "subject matter" of videos to be of as much concern given that, "subject matter of such materials may be disclosed . . . for . . . marketing goods and services directly to the consumer." 18 U.S.C. § 2710(b)(2)(D)(ii); *see also Video*

*and Library Protection Act of 1988: Joint Hearing*, at 122 (recognizing no privacy concern with "general types of products."). Importantly, the choice of Congress to use this language in this section does not undermine the fact that personally identifiable information is precisely defined as "specific video materials." Congress did not intend to create an exception that would swallow the primary rule established by the VPPA. Read in its entirety, and considering the statute as a whole and its purpose of protecting the privacy of consumers' video-viewing information, these provisions confirm that personally identifiable information is focused on a consumer's specific videos, not a subscription to access videos.

## II. The District Court's Decision Relied on Sound Reasoning.

The District Court correctly determined that, under the plain language of the VPPA, the "private viewing information" does not constitute personally identifiable information under the VPPA. Benson argues the District Court erred by relying on *Nickelodeon's* interpretation of personally identifiable information and various district court decisions Benson contends are distinguishable. Benson further argues the District Court improperly read a viewership requirement in the statute where none exists. As discussed below, neither argument has merit.

### A. The District Court's Reliance on *Nickelodeon* and Other District Court Decisions was Appropriate.

In *Nickelodeon*, this Court explained what the VPPA protects: "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *See* 827 F.3d at 290. This is the Court's interpretation of "personally identifiable information" – the exact term this case turns on. Although *Nickelodeon* involved static digital identifiers, the Court did not limit its interpretation of personally identifiable information to those particular facts. Nor did its refusal to adopt a rigid rule for deciding cases suggest otherwise. Rather, recognizing the rapid pace of changes in technology, the Court declined to establish an inflexible rule that might fail to account for new types of technologies and disclosures. *See id.* As a result, this Court articulated a standard that could be applied to the particular information disclosed in each case. *See id.* The Court also provided guidance for making the determination of whether a disclosure constitutes "personally identifiable information," identifying the classic example of a video clerk disclosing an individual customer's rental history and cautioning that "every step away from that 1988 paradigm" would make it more difficult for a plaintiff to state a claim under the VPPA. *See id.*

The District Court properly applied the governing standard of personally identifiable information articulated in *Nickelodeon*. The District Court's conclusion that general disclosures of a subscription service does not constitute the disclosure

of personally identifiable information is particularly compelling when considered against the traditional video-rental scenario described in *Nickelodeon*. Disclosing to TikTok and Meta that Benson purchased a subscription providing access to a library of videos, with no title, video, or sign of what, if anything, Benson watched, is a long way from a clerk handing over a list of movies a customer took home. At its root, the 1988 paradigm involved a concrete defined universe of videos at issue—Benson has not alleged such a concrete defined universe of videos, and this is fatal to her claim.

Moreover, the District Court did not rely solely on *Nickelodeon*, but on several well-reasoned decisions from other district courts concluding that similarly alleged disclosures did not constitute personally identifiable information under the VPPA. Contrary to Benson's assertions, those decisions are not meaningfully distinguishable from the present case.

Benson attempts to distinguish *Martin v. Meredith Corp.*, arguing the website at issue contained both video and non-video content, whereas all of SimpleNursing's subscriptions contain pre-recorded video materials and the disclosed URLs identify those subscriptions. *See* Appellant's Br. 23. But that distinction misses the point. Even if Benson's subscription provided access exclusively to video content, disclosing that Benson purchased a subscription which provided access to video content does not reveal which particular videos, if any, Benson requested or obtained

through that subscription. Benson does not allege SimpleNursing disclosed to Meta and TikTok the names of the videos available through Benson's subscription, whether Benson used her subscription, and which videos she accessed through her subscription. Indeed, the Court in *Martin* recognized that even where a webpage contained multiple videos, disclosing the webpage to a third-party alone is insufficient to establish a violation of the VPPA absent information identifying which particular video the consumer requested or obtained. *See* 657 F. Supp. 3d 227, 284 (S.D.N.Y. 2023). The same deficiency exists here.

The cases Benson cites as purportedly analogous to this case, where the courts declined to apply *Martin*, are readily distinguishable. Unlike here, each involved allegations the defendant disclosed specific videos requested or obtained by the plaintiff. *See Edwards v. MUBI, Inc.*, 773 F. Supp. 3d 868, 876 (N.D. Cal. 2025) (holding plaintiff stated a claim under the VPPA where plaintiff alleged the defendant disclosed the URL containing the title of the video plaintiff played); *Collins v. Pearson Education*, 721 F. Supp. 3d 274, 288 (S.D.N.Y. 2024) (finding *Martin* distinguishable because the plaintiff alleged that, upon requesting a video, the defendant disclosed to Meta when plaintiff requested a video, the specific name of the video, and the URL where the video was accessible); *Golden v. NBCUniversal, LLC*, 688 F. Supp. 3d 150, 160 (S.D.N.Y. 2023) (holding the First

Amended Complaint adequately alleged that Today.com "disclosed 'specific video materials' – to wit, each video's URL and name").

Benson's attempt to distinguish *Gonzalez v. Cent. Elec. Co-Op*, *Inc.*, is similarly unpersuasive. *See* Appellant's Br. 24. In *Gonzalez*, the plaintiff moved for a protective order arguing the defendant obtained evidence in violation of the VPPA by securing, through a subpoena, a list of movies available for rent at a hotel, along with the plaintiff's hotel records showing that he purchased two movies at specified prices. *See* No. CIV. 08-0623-HO, 2009 WL 3415235, at *11 (D. Or. Oct. 15, 2009). The court found the evidence did not constitute personally identifiable information because it was impossible to determine which particular movie the plaintiff rented as several movies were available at the same price. *See id.* The reasoning in *Gonzalez* applies here. Just as the records obtained through the subpoena in *Gonzalez* failed to identify the particular movies Plaintiff rented, Plaintiff fails to allege that SimpleNursing disclosed any particular videos she obtained through her subscription.

### B. The District Court Did Not Read a "Viewership" Requirement into the VPPA in Dismissing Benson's Claim.

Benson mischaracterizes the District Court's holding as imposing a "viewership" requirement in the VPPA where there is none. *See* Appellant Br. 18-19. It did not. The District Court never held that Benson had to watch a video for the VPPA to

apply. Rather, it explained that Plaintiff's "mere purchase of a subscription is insufficient to identify her specific video-watching behavior," observing that, under Benson's theory, SimpleNursing could violate the VPPA "even if Benson never accessed a single prerecorded video." JA A-11. The point was not that Plaintiff must watch a video; it was that purchasing access to a library of videos does not, standing alone, establish Benson requested, accessed, or obtained any of the videos within that library.

Benson's own allegations illustrate the distinction. She alleges she "became a subscriber" to SimpleNursing by "paying for a subscription to access prerecorded video materials." JA A-41 at ¶ 10. But she separately alleges that, "[o]n multiple occasions," she used that subscription "to request and obtain pre-recorded videos." JA A-41 at ¶ 11. Thus, even as pled, purchasing the subscription and requesting or obtaining videos are different acts. The former gave Plaintiff access to SimpleNursing's video library; the latter involved her use of that access to request and obtain particular videos. "Requesting or obtaining" a video does not necessarily mean watching a video; a subscriber could, for example, click on a video without ever playing it. Nothing in the District Court's reasoning required Benson to watch the videos. Plaintiff's allegations fell short because she does not allege SimpleNursing disclosed any actual videos she requested or obtained while using her subscription.

## III. The District Decisions Plaintiff Relies on Are Distinguishable.

Benson relies heavily on a handful of district decisions for her position that a subscription or course to access a collection of videos is sufficient. *See* Appellant Br. 24-26. All of these decisions are from other circuits, and each rest on either an erroneous interpretation of the VPPA or involve disclosures materially different from those alleged here.

*Kueppers v. Zumba Fitness, LLC* falls in the former category. With no controlling Eleventh Circuit precedent defining "specific video materials," the Court relied on decisions holding that disclosure of a URL identifying a particular video can satisfy § 2710(a)(3) and extended those decisions to hold that a URL identifying a training course was sufficient even though the URL did not identify the particular videos within that course. *See* 805 F. Supp. 3d 1226, 1231-32 (S.D. Fla. 2025). The authorities on which *Kueppers* relied on did not go that far; they involved URLs or webpages which led to specific videos plaintiff watched. Further, *Kueppers* declined to apply this Court's *Nickelodeon* standard to determine personally identifiable information.

*Haines v. Cengage Learning, Inc.*, also adopted the broader construction Benson urges, holding that disclosure of a course containing multiple videos was sufficient even though none of the videos within the course were identified. *See* No. 1:24-CV-710, 2025 WL 2336089, at *7 (S.D. Ohio May 5, 2025). Its conclusion, however,

that the course was "specific video materials" because its name and course type denoted a "particular thing" does not answer the statutory question. *See id.* Like *Kueppers*, the Court relied upon distinguishable cases in which plaintiffs alleged the disclosure of specific video titles or URLs where specific videos were available. *See id.* This decision cannot be reconciled with *Nickelodeon's* and several other decisions' controlling focus on whether the information disclosed identified the specific videos associated with the consumer. *See id.*

*Korn v. Simplilearn Americas Inc.* provides little additional support. Its analysis of "specific video materials or services" was cursory; after simply reciting the statute, the court concluded that because each course contained distinct video modules, the disclosure of the course title disclosed "precisely what videos were requested and obtained," without explaining why identifying a course containing multiple, unnamed videos satisfies the specificity requirement set out in § 2710(a)(3). *See* No. CV 25-10461-NMG, 2026 WL 472984, at *5 (D. Mass. Feb. 19, 2026). And *Damrau v. Colibri Group, LLC*, is different altogether. There, the complaint identified examples of specific video titles allegedly disclosed, an allegation missing from the Complaint here. *See* No. 4:24-CV-01441-JMD, 2026 WL 198712, at * 5 (E.D. Mo. Jan. 23, 2026). None of Benson's authorities support treating the information allegedly disclosed here as personally identifiable information under the VPPA.

## IV. Congress Did Not Intend for Personally Identifiable Information to Encompass a Subscription to Access Videos.

The text of the VPPA is clear that personally identifiable information does not encompass a subscription to access videos. To the extent, however, that this Court finds any ambiguity as to the scope of "specific video materials or services," the VPPA's legislative history confirms Congress did not intend the statute to reach the disclosure alleged here.

In introducing the VPPA, Congress intended the definition of personally identifiable information to capture the particular privacy interests the statute sought to protect. The VPPA was born after a newspaper obtained and disclosed a list of 146 videos a Supreme Court nominee, Judge Robert Bork, and his family rented from a video rental store. Congress was concerned with the disclosure of an individual's particular video selections which could reveal private information about that individual. As Representative Al McCandles, a sponsor of the first Video Privacy bill, explained:

> There's a gut feeling that people ought to be able to read books and watch films without the whole world knowing. Books and films are the intellectual vitamins that fuel the growth of individual thought. The whole process of intellectual growth is one of privacy—of quiet, and reflection. This intimate process should be protected from the disruptive intrusion of a roving eye.

*See* S. Rep. 100-599, at 8.

Congress enacted the VPPA with the goal of "preserv[ing] personal privacy

with respect to the rental, purchase, or delivery of video tapes or similar audiovisual materials" and intended the statute to be constructed quite narrowly. *See* S. Rep. 100-599, at 6 ("The right of privacy is not...a generalized undefined right."). To that end, Congress included the words "video materials or services" within the VPPA's personally identifiable information definition to identify and limit the scope of unlawful activity under the VPPA to privacy violations pertaining to such "video materials or services":

> The definition of personally identifiable information includes the term 'video' to make clear that simply because a business is engaged in the sale or rental of video materials or services does not mean that all of its products or services are within the scope of the bill. For example, a department store that sells video tapes would be required to extend privacy protection to only those transactions involving the purchase of video tapes and not other products.

*Id.* at 12.

The VPPA "does not restrict the disclosure of information other than personally identifiable information." *Id.* The legislative history confirms the statute was not intended as a general protection against the disclosure of information concerning an individual's subscription with a provider that offers video content. Its protections are tied specifically to the videos a person watches. *See also Video and Library Privacy Protection Act of 1988: Joint Hearing*, at 32 (referring to "precise titles of movies taken out of a video store"); 64 (referring to the specific "video list" related to Judge

Bork and information requests for "records of every film rented" as the concerns driving the passage of the VPPA); 131-132 (legislation would serve to provide for protection against the disclosure of the *movie* rented or purchased) (emphasis added).

The statute's authorization of statutory and punitive damages weighs in favor of "enforcing the textual linkage between a consumer and a video." *Pileggi*, 146 F.4th at 1233. Under the VPPA, a person aggrieved by a violation of the statute may recover statutory damages no less than $2,500, and punitive damages. Each time a defendant discloses information about a video a plaintiff watches to another party, the Court must award, at a minimum, $2,500, even if the plaintiff's actual damages are less. In a hypothetical class involving 1,000 consumers, statutory damages alone could total $2.5 million. Given those consequences, "the stringency of the remedy weighs against judicial expansion of the text to cover harms further removed from commerce in videos or similar audio-visual services." *Id.*

Benson's reliance on the Senate Report's discussion of the subject matter of videos is unpersuasive. The Senate Report discussed a concern that disclosing a customer list by a business who offered only a limited category of videos, such as a business only renting or selling *Star Trek* videos, would indirectly reveal the videos its customers rented or purchased. *See* S. Rep. 100-599, at 14. Unlike the Senate Report's example, the "private viewing information" SimpleNursing allegedly disclosed reveals only that Benson purchased a subscription providing access to an

undefined indefinite general library of videos. It does not indirectly reveal whether Benson accessed any videos through her subscription, much less identify which particular videos she accessed. That Benson separately alleges she used her account later to access the nursing videos is immaterial because the relevant inquiry is what SimpleNursing disclosed, not what Benson did later on.

Benson's reliance on the television season or "box set" *Lord of Rings* analogy not only does not prove their point but demonstrates the essential distinction at issue here. *See* Appellant Br. 29-30. A consumer who purchases or rents *The Lord of the Rings* box-set trilogy obtains the three films that comprise the trilogy—a concrete and defined universe of video content—and disclosing that information identifies the specific videos within that bundle. The same cannot be said of a subscription providing access to an undefined non-specific library of nurse-related videos; where nothing is known about the number of the videos available in the library, their titles, what the videos are specifically about, and most importantly, whether the subscriber accessed the videos through her subscription and which videos she accessed. Benson's theory is inconsistent with the plain text of the VPPA, too far attenuated from the 1988 paradigm, and should be rejected by this Court.

## **CONCLUSION**

For these reasons, this Court should affirm the District Court's grant of SimpleNursing's motion to dismiss with prejudice.

Dated: November 18, 2026

By: /s/ Justin Holmes, Esq.
Justin Holmes
Gordon Rees Scully Mansukhani, LLP
1717 Arch St. #610
Philadelphia, PA 19103
jholmes@grsm.com

Alexandra Sandler, Esq.
Gordon Rees Scully Mansukhani, LLP
One Battery Park Plaza, 28th Floor
New York, New York 10004
asandler@grsm.com

## CERTIFICATION OF BAR MEMBERSHIP

Pursuant to the Third Circuit Local Appellate Rule 28.3(d), the undersigned counsel hereby certifies that I and Alexandra Sandler have been admitted before the bar of the United States Court of Appeals for the Third Circuit, and we are members in good standing of the Court.

By: /s/ Justin Holmes
Justin Holmes, Esq.

## **CERTIFICATION OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(A) AND LOCAL RULE 31.1**

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(b) of the Federal Rules of Appellate Procedure because this brief contains 6,250 words, excluding parts of this brief exempted by Rule 32(f) of the Federal Rules of Appellate Procedure.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirement of the Rule 32(a)(6) of the Federal Rules of Appellate Procedure because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies and Microsoft Defender has been run on the file containing the electronic version of this brief and no viruses have been detected.

By: /s/ Justin Holmes
Justin Holmes, Esq.

## CERTIFICATION OF SERVICE

I hereby certify that, on November 18, 2026, I electronically filed Defendant-Appellee's Brief with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the appellate CM/ECF system. I also caused a copy of this brief to be served electronically on the following counsel for Plaintiff-Appellant.

R. Grant Dick, Esq.
Cooch and Taylor, P.A.
1000 North West St., STE 1500
Wilmington, DE 19801

Jason Shi
Hedin LLP
1100 15th Street NW, Sute 4-105K
Washington DC, 20005

By: /s/ Justin Holmes, Esq.
Justin Holmes, Esq.